**William R. BENNETT,**
**Movant–Appellant,**

v.

**STATE of Missouri,**
**Respondent–Respondent.**

**No. 55679.**

Missouri Court of Appeals,
Eastern District,
Division One.

June 20, 1989.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1989.

Application to Transfer to Supreme Court Denied Sept. 12, 1989.

Dave Hemingway, St. Louis, for movant-appellant.

William L. Webster, Atty. Gen., Breck K. Burgess, Asst. Atty. Gen., Jefferson City, for respondent-respondent.

REINHARD, Judge.

Movant appeals from the denial of his Rule 27.26 motion following an evidentiary hearing. We affirm.

Movant pled guilty to murder in the second degree and armed criminal action as a result of a plea bargain, and was sentenced to a term of 30 years on the murder conviction and 5 years on the armed criminal action conviction, the sentences to run consecutively. Movant was charged following the strangulation of his mother in the apartment where he and his mother lived. The state reduced a first degree murder charge to second degree and nolle prossed a rape count.

Movant filed a Rule 27.26 motion, amended by counsel, wherein he alleged there was no factual basis for his guilty plea, and that his plea was involuntary due to 1) counsel's misleading him to believe he would be paroled after seven years and 2) counsel's ineffectiveness in failing to obtain a ruling on his motion to suppress statements he made to police.

At the plea hearing, the state detailed its evidence which indicated that movant initially made an oral confession to the offenses when he was arrested for unrelated misdemeanors and that he later made a taped confession which was transcribed.

At the plea hearing, when asked if he committed the offense, he said "Yes. Again, to the best of my knowledge." The court asked what he meant. He answered "I remember my mother saying to me, 'Are you going to kill me?' I do not remember the actual strangulation of her. I do remember taking her body and putting it into the bedroom." Further questions:

Q. There wasn't anybody else there or anything like that?

A. No, sir.

Q. Just you and your mother?

A. Exactly.

Q. And she didn't do it to herself?

A. No.

Movant said that he and his mother had been drinking together. The judge asked him,

Q. Do you think Mr. Bennett that it's in your best interest not to stand trial on the murder in the first degree charge and count—and the rape charge, but to plead guilty to murder second degree and armed criminal action charges in this one?

A. I am afraid so, Your Honor.

Q. Now has [your attorney] done everything that you have asked her to do?

A. Absolutely.

He stated he talked to her for a sufficient amount of time about the case and he had given her the names of all the persons he thought would be able to aid in his defense.

Counsel stated that she met with movant's son to determine whether someone had broken into movant's apartment and murdered his mother. She was unable to find evidence to support a theory other than that movant committed the murder. She said she also had three separate psychiatric examinations performed on movant. She had an independent analysis made of the autopsy report "to see if it was possible that the deceased was dead after my client was [arrested for the misdemeanors]." She said the analysis was negative and "that it was clearly the case that the woman was, in fact, dead prior to my client being locked up."

Counsel stated she talked to neighbors, friends and relatives to see if they had seen anyone else enter or leave the apartment. She said further, "With regard to the statement, Your Honor, I did investigation, talking to my client's son as well as the third doctor that I mentioned. Dr. Tom Grisso was specifically hired to determine if that statement was voluntary or not. He is a doctor [who] specializes and has testified numerous times with regard to [the] voluntariness of statements.... Dr. Grisso's testimony would state basically that he could not testify that the statement was not voluntary; that in fact it was voluntary."

Movant testified at the evidentiary hearing as did his son, an officer who was present when he made his statement, and his trial counsel. The motion court in denying relief issued detailed findings of fact and conclusions of law.

Our review is limited to determining whether the findings, conclusions, and judgment of the motion court are clearly erroneous. Rule 27.26(j); *Richardson v. State*, 719 S.W.2d 912, 915 (Mo.App.1986). After a plea of guilty, the effectiveness of counsel is relevant only to the extent it affects the voluntariness of the plea. *Armour v. State*, 741 S.W.2d 683, 688 (Mo. App.1987).

▮ Movant first contends that the motion court erred in finding that counsel did not tell him how many years he would have to serve on his 35 year sentence and that movant was not misled into believing he would serve only 7 years.

Movant testified that counsel told him he would be paroled in 7 years on a 35 year sentence. Counsel testified that she did not specifically recall talking to appellant about how much time he would serve on his sentence. However, she said "I know I do with every single client, on any type of case at the time, especially [if] someone is not a prior or persistent. I would always tell the client they would do anywhere between a quarter and a third of their time prior to being eligible for parole and its up to the parole board." She stated she never made a promise to movant that he would have to serve a certain amount of time. Counsel's credibility was for the motion court; the court is not required to believe the testimony of any witness, even if uncontradicted. *Leigh v. State*, 673 S.W.2d 788, 790 (Mo.App.1984). The court here chose not to believe movant.

Movant next contends the motion court erred in failing to address his claim that the motion court should not have accepted his guilty plea where the plea transcript showed there was no factual basis for the plea. Our reading of the motion court's findings and conclusions leads us to conclude the court did address this issue, although not in the same words as expressed by movant in his brief. In any event, the plea transcript fully reveals that there was a factual basis supporting a knowing and voluntary plea of guilty.

■ Finally, movant contends the motion court erred in concluding that counsel's failure to call up a motion to suppress movant's confessions was trial strategy. Counsel testified the state's offer was contingent on no further proceedings being had in the case. This statement fully supports the motion court's conclusion.

The findings and conclusions of the motion court are not clearly erroneous.

Judgment affirmed.

CRANDALL, P.J., and CRIST, J., concur.